Cavanagh, J.
(dissenting). The majority’s analysis in this case is flawed for one basic reason — it simply misapplies the law to the facts. This misapplication results in the majority reaching a conclusion that is contrary to the words used by the Legislature in the stalking statute, MCL 750.411h(l)(c). The majority errs because it does not truly examine whether defendants’ conduct served a legitimate purpose. Because I believe that a genuine issue of material fact exists regarding whether the conduct at issue served a legitimate purpose, I respectfully dissent.
The civil stalking statute, MCL 600.2954, creates a civil cause of action for victims of stalking as defined by the criminal stalking statute, MCL 750.411h. “Stalk *727 ing” is defined as “a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.” MCL 750.411h(l)(d). “Harassment” is defined as “conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress.” MCL 750.411h(l)(c). Notably, MCL 750.411h(l)(c) further states, “Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose." (Emphasis added.)
Because the statutory language at issue in this case is clear and unambiguous, we must enforce the statute as written and follow its plain meaning, giving effect to the words chosen by the Legislature. People v Barbee, 470 Mich 283, 286; 681 NW2d 348 (2004). Thus, to give effect to the words of the stalking statute, once a legitimate purpose is established, the essential question must be how the defendant’s conduct at issue serves that legitimate purpose. In this case, the legitimate purpose was for defendants to provide information that would assist the insurance company that hired them in defending against plaintiffs claim. The examination, therefore, entails looking at how defendants’ conduct served that legitimate purpose.
After plaintiff filed his underlying lawsuit, Citizens Insurance Company of America hired defendant Henderson & Associates Investigations, Inc. (Henderson), to conduct an “activities check” on plaintiff. The purpose of the activities check was to determine what plaintiffs *728 activities entailed. During one instance of surveillance, defendant Andrew Conley, a private investigator working for Henderson, followed plaintiff from his house to a restaurant and then to plaintiffs appointment with his therapist. Plaintiff noticed that he was being followed, and he spoke to his therapist about the incident. Plaintiff and his therapist went outside where plaintiff asked Conley if he was following plaintiff. Conley said he was not. Plaintiff did not believe this and became upset; he also wrote down the license plate number of the car Conley was driving. Conley then drove off and parked about one hundred to three hundred yards away before ultimately terminating the surveillance. The critical question in this incident is how the private investigator’s actions served the legitimate purpose of gathering information about plaintiff to be used to defend against plaintiffs lawsuit. For example, how does following plaintiff and then lying to plaintiff about being followed serve the legitimate purpose of gathering information?
In some cases, following a person and lying about it to the person being followed may indeed be conduct that serves a legitimate purpose. For example, if an undercover police officer is conducting surveillance of a suspect and is then confronted by the suspect, the police officer may lie so that the undercover operation is not disclosed. However, in this case, defendants contend that plaintiff should not have been frightened by being followed because plaintiff was a party to a lawsuit. Defendants have repeatedly argued that “[a] reasonable person would understand that he’s going to be under surveillance if that person files a lawsuit.”[1] Therefore, I question what legitimate purpose was served by follow *729 ing plaintiff and then lying to plaintiff and telling him that he was not being followed. If plaintiff should already know that he may be followed because he is a party to a lawsuit, I fail to see how admitting to plaintiff that he is being followed because of the pending lawsuit would hamper the investigation. I understand the importance of wanting to be as secretive as possible about the actual surveillance, but once plaintiff realized that someone was following him, I do not see how, in this case, the legitimate purpose was served by lying.
Defendants cannot have it both ways. Defendants cannot argue that lying to plaintiff is critical in this case to keep the surveillance a secret so they can ascertain needed information. Defendants have already argued that plaintiff — by virtue of filing a lawsuit — should have known that he was likely to be followed and, therefore, should not have been afraid to see someone following him. Therefore, defendants must explain how, in this case, following plaintiff and then lying to him about it served a legitimate purpose.
In another instance, plaintiff was aware of being followed, and he detailed defendants’ conduct in following him in and out of traffic. Another time, plaintiff realized he was being followed when he came out of his doctor’s office. He telephoned his wife and she did not believe him when he told her, “half crying,” that he was being followed. Because plaintiff was so afraid, plaintiffs wife was forced to come home. When she arrived, there were two cars parked near their home. After dressing like the plaintiff and leaving her home, plaintiffs wife realized that the two cars were following her, apparently because the drivers thought they were following her husband.
*730 During the final incident of surveillance, private investigators followed plaintiff as he drove around in circles in a parking lot attempting to write down the license plate numbers of the cars the investigators were driving. They continued to follow plaintiff as he drove through traffic trying to “lose” the men who were following him. They drove through yellow lights and made an illegal right turn to follow plaintiff. One of the private investigators stated that it was clear plaintiff was trying to get away from them, but they continued to follow him anyway. It is important to note that at no time did defendants ever admit to plaintiff that they were indeed following him or tell him why he was being followed.
As stated, the issue is whether the conduct engaged in by defendants served a legitimate purpose. It is important to not merely examine the conduct at issue in a vacuum. Therefore, it is not enough to merely argue that defendants’ conduct was appropriate because they had a legitimate purpose to provide information related to plaintiffs underlying lawsuit. Applying the statute in this manner disregards the words chosen by the Legislature and results in the majority essentially providing a generalized exemption for private investigators. The appropriate analysis requires more than the oversimplification adopted by the majority. In following, “tailing,” sleuthing, or surveilling, is there no limit on an investigator’s tactics? I think not. A private investigator’s conduct — no matter how outrageous — is not excused merely because he is gathering information for a client. There must be some professional standards that, when violated, remove the investigator from the “legitimate purpose” shield.
A proper application of the law indicates that whether defendants’ conduct served a legitimate purpose pre *731 sents a genuine issue of material fact. Accordingly, because a reasonable juror could find that the conduct did not serve a legitimate purpose, I must respectfully dissent.
KELLY, J., concurred with CAVANAGH, J.

 Again, during oral argument, defendants argued “that a reasonable person who would be a plaintiff in a personal injury lawsuit, he or she has *729 an opportunity to know in fact that at some point during the litigation it may become an issue where he or she is placed under surveillance.”